IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BETTY HUMPHREY                                              PLAINTIFF

VS.                       NO. 4:16-CV-0036-SWW

CENTERS FOR YOUTH AND FAMILIES, INC.,              DEFENDANTS

MELVIN CALDWELL'S AFFIDAVIT

STATE OF ARKANSAS)
                 )
COUNTY OF PULASKI)

I, Melvin Caldwell, do hereby state under oath as follows:

1.     That I am Melvin Caldwell, and I am a neutral witness in the above-captioned case.

2.     That I am an African-American male, and, I am above the age of Forty (40).

3.     That I hereby swear and affirm that the contents and statements made by me are true and correct.

4.     That I specifically state that I began my employment at Centers for Youth and Families, Inc., in 1994, making about Seven dollars ($7.00) per hour.

5. That I was terminated in 2013, by Centers for Youth and Families, Inc., and, my termination by Centers for Youth and Families Inc., was proper.

6. That I held the position of Staff Development Coordinator at Centers for Youth and Families, Inc. (hereinafter "Centers"), for more than thirteen (13) years.

7. That as part of my job duties, I viewed surveillance videos of employees who had contacts with the clients of Centers for Youth and Families, Inc.

8. That I taught Handle With Care (HWC) for about eight (8) to ten (10) years, and I am very familiar with HWC principles and techniques taught by Centers for Youth and Families, Inc. from the time of my employment to the time of my termination.

9. That I personally taught Betty Humphrey about twice (2) a year in HWC principles and techniques.

10. That I have known Betty Humphrey for about thirteen (13) years and have known her to be a valuable employee with solid work ethics, and team player while she was an employee at Centers.

11. That I have viewed the surveillance video of the incident in questioned, with Shamar Rawls on August 13, 2013; the one of the things that stood out to me is the blacked out section of the video; that this is not a normal

occurrence in the other videos I viewed with Centers', and the camera must have malfunctioned recording the incident between Betty Humphrey and ~~Shamar Rawls~~ on August 13, 2013.

12. That due to the camera malfunctioning, there are certain sequences that are missing and there is no way to recover the segment that was blacked out; there is no way of knowing what specific acts are missing from the video; that based on my personal experience at Centers, old cameras malfunction often.

13. That based on word of mouth, I believe that Centers now have upgraded their cameras to fix the blacked out issue, and, we will never know what is missing from the video.

14. That based on what I saw in the video, Betty Humphrey interaction with the client, ~~Shamar Rawls~~, was as I taught her; that she feared that imminent danger of serious bodily harm could occur to her; that this is a subjective standard, like a police officer who fears for their life.

15. That I taught every Staff Member with Centers, they have a right, by HWC policy and by law, to defend himself or herself when they feel an imminent danger of harm posed by a client's hostile and threatening behavior.

16. That Bruce Chapman, the founder of HWC, taught the same principle, that each Staff Member, has a right to protect themselves.

17. That Betty Humphrey did what was taught to her by me personally; that she firmly grabbed hold to the client's shirt to de-escalate, direct, and manage ~~Shanpar Rawls~~' behavior because she felt imminent danger of harm.

18. That Betty Humphrey should not have been terminated and a termination would not have been proper; that I would have recommended that Betty go back through the training for protocol and refresher; and termination of Betty Humphrey was because of her race and age.

19. That going back through the training is a normal procedure after an Emergency Safety Invention (ESI).

20. That based on my experience, knowledge, and belief, there was no legitimate reason to terminate Betty for this incident, especially since the disruptive client was not injured in any way.

21. That I have reviewed between 50 to 100 surveillance videos in my Nineteen (19) years at Centers; that in these type of situations like Betty Humphrey's, termination is generally never recommended by the supervisor.

22. That I do know of several situations where Centers have arbitrarily and randomly terminated people for improper and illegal holds, including use of excessive force.

23. That I do know of several situations where Centers has sent people back for retraining by me or have me work with them in one-on-one sessions to

talk about the incident and how the situation could have been handled in a different manner. I believe that this would be a HIPPA violation of the client's right to privacy to do this in a group setting, and I would not show any videos of this nature in a group setting.

24. That Betty Humphrey's hold was neither improper, nor illegal, nor an excessive use of force under the circumstances of her belief that she was being threatened by the disruptive client with imminent bodily harm.

25. That the surveillance video I viewed in this case had no audio, which I found strange because the videos always had audio; that when I was in charge of the Monticello operation for Centers, I could view videos from my Little Rock office and hear and see what happened, unfortunately, there was no audio on this defective surveillance video involving Betty Humphrey.

26. That I believe that Betty Humphrey is the only person who can describe what she felt at that moment in the video; that we can only take her word for her mental state at that time.

27. That I have been threatened by clients at Centers before myself; that I have done physical holds on disruptive clients myself; in fact, Tim Scott had to rescue me from an attack by a young female client; that a girl was coming to attack me right after I returned to work from having surgery, and Tim Scott heard hollering down the hallway; that it was me hollering for help; that I felt at risk and

I felt that imminent danger of harm would have happened in the classroom if Tim had not come to save me; in fact, Tim had to use CPI, a child control to rescue me from the attack.

28. That I do know that Centers have terminated people for pretextual reasons in order to cover the real reasons for termination; that they have terminated Thaddeus Spraggins and hired David Harley, Tim Beashears friend in his position; that in fact, Thaddeus Spraggins trained David Harley for his position; I believe that it was under a pretext that Centers terminated Thaddeus after nine (9) years and hired Tim's friend David.

29. I believe that if the client was disruptive and throwing rocks at other clients, he should have been in the Time-Out Room, not Betty's classroom.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 15-th day of October, 2016.

_____
Melvin Caldwell

## VERIFICATION AND ATTESTATION

Subscribed and Sworn to before me, a Notary Public, this 15th day of October, 2016.

_____
Notary Public

MY COMMISSION EXPIRES:
07/16/2018

